JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, <br><br> Plaintiff, <br><br> v. <br><br> PEARL DELTA FUNDING LLC, dba PEARL CAPITAL, a Delaware Limited Liability Company, MYFAZ CONSULTING LLC dba ATM FUNDED, a Pennsylvania Limited Liability Company, and WHITE ROAD CAPITAL, LLC dba GFE HOLDINGS, a Delaware Limited Liability Company <br><br> Defendants. | § § § § § § § § § § § § § § § § § § EP23CV0177 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant PEARL DELTA FUNDING LLC dba ("Pearl Capital") ("Pearl Capital") is a limited liability corporation organized and existing under the laws of Delaware and can be served via registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

3. Defendant MYFAZ CONSULTING LLC dba ATM FUNDED ("MyFaz") is a limited liability company organized and existing under the laws of Pennsylvania and can be served via registered agent United States Corporation Agents, Inc., 9900 Spectrum Drive, Austin, TX 78717.

1

4. Defendant WHITE ROAD CAPITAL LLC d/b/a GFE HOLDINGS ("GFE") is a limited liability company organized and existing under the laws of Delaware and can be served via registered agent The Corporation Trust Company at Corporation Trust Center 1209 Orange St, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Counts I under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

6. The Court has supplemental jurisdiction over Counts II under 28 U.S.C § 1367.

7. This Court has specific personal jurisdiction over Defendant Pearl Capital because Defendant Pearl Capital purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant Pearl Capital's purposeful contacts with Texas and the litigation:

   a. Defendant Pearl Capital targets Texas when marketing small business loans and regularly conducts business in this District, including telephone solicitation.

   b. Its agent MyFaz, called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Pearl Capital's business funding.

   c. These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant Pearl Capital, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

8. This Court has specific personal jurisdiction over Defendant MyFaz because MyFaz purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between MyFaz's purposeful contacts with Texas and the litigation:

   a. MyFaz targets Texas when marketing business funding and regularly conducts business in this District, including telephone solicitation.

   b. MyFaz called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Defendants Pearl Capital and GFE's business funding.

   c. MyFaz's calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

9. This Court has specific personal jurisdiction over Defendant GFE because Defendant GFE purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant GFE's purposeful contacts with Texas and the litigation:

   a. Defendant GFE targets Texas when marketing small business loans and regularly conducts business in this District, including telephone solicitation.

   b. Its agent MyFaz, called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Pearl Capital's business funding.

   c. These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant GFE, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

10. Venue is proper under 28 U.S.C. § 1391(b)(2).

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

11. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

20. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

23. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

24. The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

25. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

26. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

6

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

27. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

28. Plaintiff personally successfully registered his phone number ending in 4604 on the National Do-Not-Call Registry ("DNC") in December 2007.

29. Plaintiff was registered on the National DNC at all times relevant to this Complaint.

30. Plaintiff has been besieged with phone calls related to a merchant cash advance (MCA).

31. MCAs are unregulated "loans" made via an agreement to purchase future revenues of a business. MCAs are designed to bypass usury laws that prevent companies from charging extraordinary interest rates. MCAs often exceed 60% interest rates.

32. Plaintiff has been inundated with phone calls from companies offering MCAs. This includes receiving at least 17 phone calls from Defendant MyFaz soliciting MCA loans on behalf of Defendant Pearl Capital and Defendant GFE.

33. **Call #1**. On March 18, 2022, at 7:56 AM, Plaintiff received the first call with the phone number 917-795-6543 showing on the caller identification. Plaintiff declined this phone call because it was at 7:56 AM and woke Plaintiff up from his sleep.

34. **Call #2**. On March 18, 2022, at 7:56 AM, Plaintiff received another phone call from 917-795-6543. Plaintiff answered the phone and informed the caller that it was before 8 AM in the morning because Plaintiff was on Mountain Time.

35.     **Call #3**. On March 18, 2022, the caller from paragraphs 33 and 34 called Plaintiff at 8:00 AM. This was the third phone call in a matter of four minutes from Defendant MyFaz soliciting a Merchant Cash Advance on behalf of Defendants Pearl Capital and GFE.

36.     Plaintiff engaged the telemarketer in paragraph 35 for the sole purpose of determining who had called Plaintiff three times before 8:00 AM. The telemarketer then emailed Plaintiff from elizebeth@atmfunded.com.

37.     Elizabeth McCabe is the telemarketer from paragraph 36. Her email listed a cell phone number of 917-795-6543 and stated her company as ATM Mutual Business Consultants.

38.     McCabe submitted Plaintiff's information for an MCA and on March 18, 2022, Plaintiff was sent an MCA contract. The first page of the MCA contract stated, "I hereby certify that ISO – MYFAZ CONSULTING LLC (ATM Funded) ("Agent") acted as a Merchant's agent." The contract was from GFE and explicitly said Defendant MyFaz was GFE's agent.

39.     **DNC Request #1. Call #4**. On March 18, 2022, at 10:26 am Plaintiff received a phone call from 917-795-6543. Plaintiff answered the call and the agent began soliciting Plaintiff for an MCA. Plaintiff made a DNC request stating:

>   "I'm busy, don't call anymore." Plaintiff disconnected the call.

40.     After Plaintiff disconnected the call on paragraph #31, Plaintiff received a text message at 10:56 am stating the following:

>   "Hi Brandon, I know you're busy, and don't want to bother you…"

41.     Defendants' agent understood Plaintiff's desire to not receive phone calls. Defendant's agent ignored Plaintiff's request.

42.     **Call #6**. On March 21, 2022, Plaintiff received a phone call that displayed 917-795-6543 displayed on the caller identification. The agent solicited Plaintiff for an MCA. Plaintiff had

8

just days prior delivered a DNC request. Therefore, Plaintiff played along to determine the company on whose behalf the DNC request was being ignored.

43. Plaintiff received an email shortly after the call from carlos.garcia@pearlcash.com with a contract for an MCA loan. The contract was from Defendant Pearl Capital and listed MyFaz Consulting LLC as the agent behind the contract solicitation.

44. Between March 28, 2022, to March 30, 2022, Plaintiff received 10 additional calls from Defendant MyFaz soliciting Plaintiff on behalf of Defendants Pearl Capital and GFE.

45. Table below displays calls and text messages made to Plaintiff by Defendant MyFaz on behalf of Defendants Pearl Capital and GFE.

**TABLE A**

| Number: | Date: | Time: | Caller ID: | Notes: |
|---|---|---|---|---|
| 1. | 03/18/2022 | 7:56 AM | 917-795-6546 | Call declined |
| 2. | 03/18/2022 | 7:56 AM | 917-795-6543 | Immediately called back. |
| 3. | 03/18/2022 | 8:00 AM | 917-795-6543 | Engaged Elizabeth to determine who was calling |
| 4. | 03/18/2022 | 10:26 AM | 917-795-6543 | DNC Request |
| 5. | 03/18/2022 | 10:56 AM | 917-795-6543 | Agent sent a text |
| 6. | 03/18/2022 | 12:59 PM | 917-795-6543 | Missed call |
| 7. | 03/21/2022 | 4:52 PM | 917-795-6543 | Agent sent contract |
| 8. | 03/28/2022 | 9:01 PM | 917-795-6543 | Missed Call |
| 9. | 03/28/2022 | 10:14 AM | 917-795-6543 | Missed Call |
| 10. | 03/28/2022 | 10:53 AM | 917-795-6543 | Missed Call |
| 11. | 03/28/2022 | 11:02 AM | 917-795-6543 | Missed Call |

| 12. | 03/28/2022 | 12:15 PM | 917-795-6543 | Missed Call |
| 13. | 03/28/2022 | 1:56 PM | 570-793-7487 | Missed Call |
| 14. | 03/29/2022 | 8:40 AM | 570-793-7487 | Missed Call |
| 15. | 03/29/2022 | 11:49 AM | 917-795-6543 | 58 sec |
| 16. | 03/30/2022 | 8:38 AM | 917-795-6543 | Missed call |
| 17. | 03/30/2022 | 3:55 PM | 917-795-6543 | Missed call |

46. Defendants GFE and Pearl Capital employ, contract, and/or authorize Independent Sales Organizations ("ISOs"), like Defendant MyFaz, to solicit MCAs to business owners

47. On April 28, 2023, Plaintiff searched on the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code 302.101 for any of the Defendants.

48. Defendants MyFaz, Pearl Capital, and GFE do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

49. Defendants MyFaz, Pearl Capital, and GFE participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful telemarketer's calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful solicitation calls.

50. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

51. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

52. No emergency necessitated the calls.

53. Through information and belief, Defendant MyFaz did not have a written do-not-call policy while it was sending Mr. Callier unsolicited calls.

54. Through information and belief, Defendants MyFaz, GFE, and Pearl Capital did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

55. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

56. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

57. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

58. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

## VICARIOUS LIABILITY OF PEARL CAPITAL FOR CALLS PLACED BY MYFAZ

59. Pearl Capital is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as MyFaz. In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

60. Pearl Capital solicits merchant cash advances ("MCAs") through direct telephone solicitation by its hired telemarketer MyFaz, who acts on its behalf. MyFaz provides live, hot leads to Peal Capital and Pearl Capital accepts the leads. MyFaz was Pearl Capital's agent when it made the prohibited calls on behalf of and with the actual authority from Pearl Capital pursuant to a contract that governs MyFaz'z telemarketing for Pearl Capital.

61. Pearl Capital directs, controls, authorizes, and pays MyFaz to generate live-transfer leads for Defendant's MCAs through telephone solicitation. Moreover, it requires, authorizes, or at least permits MyFaz's telemarketers to solicit explicitly for MCAs.

62. Pearl Capital sets the criteria for qualifying leads, which MyFaz must follow, and MyFaz transfers leads qualified on those criteria exclusively to Pearl Capital and GFE.

63. On information and belief, Pearl Capital and GFE write or at least approve the call script MyFaz's telemarketers use when qualifying leads for Pearl Capital and GFE.

64. MyFaz's telemarketers are Pearl Capital's associates and do nothing to disturb the impression that MyFaz's telemarketers work for and speak and act on behalf of Pearl Capital.

65. From MyFaz's telemarketer's initial call through the last call received by Plaintiff, Pearl Capital's MCA solicitations constitute a singular, coordinated marketing effort devised, authorized, directed, and controlled by Pearl Capital, the principal, with MyFaz acting as Pearl Capital's agent.

66. MyFaz, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Pearl Capital's criteria, and then submitted Plaintiff's information to Pearl Capital's advisor to continue marketing merchant cash advances.

### VICARIOUS LIABILITY OF GFE FOR PHONE CALLS PLACED BY MYFAZ

67. GFE is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as MyFaz. In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

68. GFE solicits merchant cash advances ("MCAs") through direct telephone solicitation by its hired telemarketer MyFaz, who acts on its behalf. MyFaz provides live, hot leads to GFE and GFE accepts the leads. MyFaz was GFE's agent when it made the prohibited calls on behalf of and with the actual authority from GFE pursuant to a contract that governs MyFaz'z telemarketing for GFE.

69. GFE directs, controls, authorizes, and pays MyFaz to generate live-transfer leads for Defendant's MCAs through telephone solicitation. Moreover, it requires, authorizes, or at least permits MyFaz's telemarketers to solicit explicitly for MCAs.

70. GFE sets the criteria for qualifying leads, which MyFaz must follow, and MyFaz transfers leads qualified on those criteria exclusively to Pearl Capital and GFE.

71. On information and belief, Pearl Capital and GFE write or at least approve the call script MyFaz's telemarketers use when qualifying leads for Pearl Capital and GFE.

72. MyFaz's telemarketers are GFE's associates and do nothing to disturb the impression that MyFaz's telemarketers work for and speak and act on behalf of GFE.

73. From MyFaz's telemarketer's initial call through the last call received by Plaintiff, GFE's MCA solicitations constitute a singular, coordinated marketing effort devised, authorized, directed, and controlled by GFE, the principal, with MyFaz acting as GFE's agent.

74. MyFaz, acting with actual authority, made the prohibited calls, qualified Plaintiff according to GFE's criteria, and then submitted Plaintiff's information to GFE's advisor to continue marketing merchant cash advances.

### Plaintiff's Cell Phone is a Residential Number

75. The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 17 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code § 302.101

76. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

77. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

14

78. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

79. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

80. Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

81. Under Texas Business and Commerce Code § 302.302(d) Plaintiff is entitled to all reasonable costs of prosecuting the case including attorney's fees, deposition costs, investigation costs, and witness fees.

## I. FIRST CLAIM FOR RELIEF

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

82. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-81

83. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

84. Plaintiff was statutorily damaged at least seventeen (17) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telephone calls described above, in the amount of $500 per call.

85. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

86. As a result of Defendant's violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

87. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF
### (Violations of The Texas Business and Commerce Code 302.101)
### (Against All Defendants)

88. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-81.

89. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

90. Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

91. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees and attorney's fees. **Texas Business and Commerce Code 302.302(d).**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.  An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.  An award of $1500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for seventeen (17) calls.

E.  An award of $5,000 in statutory damages arising from seventeen (17) violations of the Texas Business and Commerce code 302.101.

F.  An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.  An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity.

H.  Such further relief as the Court deems necessary, just, and proper.

May 1, 2023,                                         Respectfully submitted,

*/s/ Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com